UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOMINIC MARINO,

           Plaintiff,

v.                                          **DECISION AND ORDER**
                                                    11-CV-453S

HOGANWILLIG, PLLC,

           Defendant.

## I. INTRODUCTION

Plaintiff, Dominic Marino, brings this action alleging that Defendant, HoganWillig, PLLC ("HoganWillig"), violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq.* ("FDCPA"). Presently before this Court is HoganWillig's motion for summary judgment. (Docket No. 9.) For the following reasons, that motion is denied.

## II. BACKGROUND

**A.**    **Facts**

In 2009, Marino became indebted to Harlem Anesthesia, PLLC ("Harlem") for the fees associated with a medical procedure, which were not entirely covered by his medical insurance. (Marino Affidavit, ¶¶ 3,4; Docket No. 19.) Marino claims that thereafter his wife called Harlem to inquire whether it would accept $760.00 in full satisfaction of the $1,380.00 debt. (Id., ¶ 6.) Harlem allegedly agreed and Marino mailed a check to Harlem in that amount in accordance with the agreement. (Id., ¶ 7.)

Despite Marino's claim that he had settled his debt, Practice First Management, the billing agent for Harlem, forwarded the balance of the debt, $620.00, to HoganWillig for collection in September of 2010. (Defendant's Statement of Facts, ¶ 2; Docket No. 9.) The parties then exchanged a series of letters. On September 8, 2010, HoganWillig sent a

payment-demand letter to Marino. (Id., ¶ 4.) Five days later, HoganWillig received a response from Marino, wherein he (1) instructed HoganWillig to cease and desist contacting him and (2) informed it that he disputed the debt and that he believed it to be extinguished. (Id., ¶ 5.) Two days after that, on September 15, 2010, HoganWillig forwarded to Marino an itemized bill from Harlem that outlined the charges incurred and the partial payment; there was apparently no record of the alleged accord. (Id., ¶ 6.) Thereafter, on two occasions, October 8 and 29, 2010, HoganWillig sent a letter to Marino informing him each time that this was his "final" notification and requesting that he pay the debt. (Id., ¶¶ 9-11.)

Marino did not pay the disputed $620.00, but HoganWillig took no further action on the debt due to an internal policy change regarding the costs and benefits of pursuing claims under $1,000.00. (Diane Tiverton Declaration, ¶¶ 25, 26; Docket No. 10.)

**B.    Procedural History**

Marino filed his complaint in this Court on May 26, 2011. (Docket No.1.) The next month, on June 27, 2011, HoganWillig filed its answer. (Docket No. 4.) On September 20, 2011, HoganWillig moved for summary judgment, briefing on which concluded on November 14, 2011. This Court then took the motion under consideration.

### III. DISCUSSION

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    Alleged FDCPA Violations & HoganWillig's Motion to Dismiss**

Marino asserts that HoganWillig violated Sections 1692e, 1692e(10), and 1692c(c) of the United States Code.[1,2] Each section will be discussed below.

---

[1] Marino withdrew his claim alleging a violation of Section 1692e(5). (Plaintiff's Memorandum of Law in Opposition to Summary Judgment, p. 1; Docket No. 19-4.)

[2] Section 1692e generally provides that debt collectors may not use any false, deceptive, or misleading representations to collect a debt. Section 1692e(10), the tenth of sixteen examples of such a violation that are specifically outlined by the statute, repeats that prohibition but adds "or to obtain information concerning a consumer." Marino does not distinguish between the two sections and he does not claim that HoganWillig sought to "obtain information" about him.
   It should be further noted that a violation of Section 1692e is actionable absent a violation of any of the sixteen examples. See 15 U.S.C § 1692e; see also Clomon v. Jackson, 988 F.2d. 1314, 1320 (2d

3

1. **§ 1692c(c)**

This section protects consumers against unwanted communication from debt collectors. It provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except –
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c)

It is undisputed that Marino sent such a notification to HoganWillig and that HoganWillig continued to communicate with him after receiving the "cease-and-desist" letter. HoganWillig, however, argues that its communication was permitted for two reasons: (1) its October 8 and 29 letters were meant to notify him that it planned to "invoke specified remedies"; and (2) by informing HoganWillig that he disputed the debt, Marino triggered Section 1692g(b), requiring HoganWillig to respond with its September 15 letter.

Section 1692g(b) of the United States Code provides that if a consumer disputes a debt in writing, the debt collector must cease collection of the debt until it has verified the debt with the creditor and forwarded that verification to the alleged debtor. 15 U.S.C. §

---

Cir. 1993).

1692g(b). HoganWillig argues that this section "required" it to send the validation letter. Although this is not technically accurate – the statute only prohibits further action on the debt without validation, it does not require validation – this Court agrees with the principle behind HoganWillig's argument. To hold otherwise would force HoganWillig into a frozen state where it could not seek to collect the debt because compliance with Section 1692g(b) would violate Section 1692c(c). See Heintz v. Jenkins, 514 U.S. 291, 296, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) (suggesting that courts interpret Section 1692c(c) to avoid "anomalies" within the FDCPA); Recker v. Cent. Collection Bureau, Inc., No. 1:04-CV-2037-WTL-DFH, 2005 WL 2654222, at *4 (S.D. Ind. Oct. 17, 2005) ("Because verification is a statutorily required activity in order to resume collection activities, verification activities could be communications allowed implicitly under exception 1692c(c)(3)."). Thus, this Court finds that HoganWillig's September 15, 2010 letter did not violate the FDCPA.

This leaves the October 8 and 29 letters. As noted, HoganWillig argues that these letters fall into the second or third exceptions of Section 1692(c).

In relevant part, the October 8 letter states:

> Please forward your check in the amount of $620.00, made payable to HoganWillig, with [sic] ten (10) days of receipt of this notice, or contact Cindy at (716) 932-6565, to make arrangements for a payment schedule with our firm. Should we not receive your check or hear from you within said ten (10) days, we will report this account to the credit reporting agencies. Such action may affect your ability to obtain access to various types of credit, including, but not limited to, loans and mortgages.

(October 8 Letter; Docket No. 19-3.) The October 29 letter differs only in that it also notifies Marino that HoganWillig may "seek the court's assistance in collecting this debt" and

5

explains that if an adverse judgement were entered against him, the court might garnish his wages, seize his bank account, or place a lien on his home. (October 29 Letter; Docket No. 19-3.)

HoganWillig points to the offer of a payment plan as a permissible "specified remedy." Although one court has found that an offer of a payment plan is a "specified remedy," HoganWillig's argument fails for three reasons.

Initially, it should be noted that HoganWillig's argument is specious from the outset. This is not a case where, after receiving Marino's request to cease communication, it responded with a payment plan. Rather, this language, the option to "contact Cindy," appears to be form language and is found on the initial September 8, 2010 letter (and on the later, October 29 letter). Thus, HoganWillig had already informed Marino about this payment-plan option and its efforts to characterize the October 8 letter as one simply informing Marino of this remedy is tenuous and strained.

Second, HoganWillig's reliance on Lewis v. ACB Business Services, Inc., 911 F. Supp. 290 (S.D. Ohio 1996) is misplaced. This is the only case cited by HoganWillig to support its position that a payment plan should be considered a specified remedy. However, even accepting that proposition as true, Lewis does not compel a result in HoganWillig's favor. The Lewis court found that a communication that detailed "various payment plans which are available to the debtor" did not violate Section 1692c(c) because it was permitted under that statute's exceptions. Id. at 293.  But no such "various payment plans" were offered in the October 8 or 29 letters. Instead, the letters offered a generic and generalized option to "contact Cindy." This is a distinction with a difference: The goal of the FDCPA is to "eliminate abusive debt collection practices." See Hess v. Cohen & Slamowitz

6

LLP, 637 F.3d 117, 120 (2d Cir. 2011). A communication that requests payment, then threatens to report the debt to credit reporting agencies, then implies that the debtor will struggle to get future loans, and then notes that his wages may be garnished, is certainly more abusive than one that simply details "various payment plans."[3] Further, as noted by Marino, to hold otherwise would allow debt collectors to send what are otherwise payment-demand letters, in violation of § 1692c(c), by simply including a passing reference to a payment-plan option. This is plainly at odds with the spirit of the "specified remedy" exceptions.

Finally, HoganWillig's argument is undermined by the fact that it sent two letters subsequent to receiving Marino's request to cease communication. The Lewis court stressed that further communication after receiving such a letter must be the "last legal talk-off" and the "last measure." 911 F. Supp at 293. The Section 1692c(c) exceptions do not allow an endless stream of communication detailing every remedy that the debtor may take – it is limited to one such communication. See id.; see also Federal Trade Commission, 27th Annual Report to Congress on the Fair Debt Collection Practices Act (FDCPA) 17-18 (2005), *available at* http://www.ftc.gov/reports/fdcpa05/050729fdcparpt.pdf

---

[3]Indeed, the letter in Lewis was markedly different from the letter in this case. The Lewis letter stated:

> IN A PERCENTAGE OF CASES, I FIND THAT PAYMENT
> ARRANGEMENTS MAY NOT HAVE BEEN OFFERED BY OUR
> AFFILIATED OFFICE. IN ORDER TO PROVIDE YOU WITH AN
> OPPORTUNITY TO PAY THIS DEBT, PLEASE SELECT ONE OF THE
> FOLLOWING PAYMENT ARRANGEMENTS AND ENCLOSE
> PAYMENT, OR PROVIDE ME WITH A NUMBER WHERE I CAN
> CONTACT YOU TO DISCUSS TERMS.

Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 396 (6th Cir. 1998) (affirming the Southern District of Ohio decision, *supra*).

("We believe Section 805(c) should be amended to clarify that, after a debt collector receives a consumer's written request to cease its communications with the consumer, the collector may contact the consumer *only one more time* and only for one or more of the permissible purposes.") (Emphasis added). Although the proposed amendment has not been adopted by Congress, it would not change the statute substantively, but merely make it clear that only one follow-up letter is permissible. Thus, even assuming, *arguendo*, that the October 8 letter did not violate the FDCPA, the October 29 letter did. HoganWillig's motion on this ground is therefore denied.

### 2.    §§ 1692e and 1692e(10)

Sections 1692e and 1692e(10) protect against "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C § 1692e(10). Marino claims that HoganWillig violated these provisions by sending two letters, on October 8 and 29, each of which independently informed him that the letter served as his "final letter." In other words, his claim is that the first "final letter" letter contained a false and misleading representation because it was not final.

To determine whether a violation under Section 1692e has occurred, this Circuit employs the "least sophisticated consumer" test. Clomon, 988 F.2d. at 318. "The basic purpose" of this standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Id. But "[t]he unsophisticated consumer isn't a dimwit. She may be uninformed, naïve and trusting but she has rudimentary knowledge of the financial world and is capable of making basic logical deductions and inferences." Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645 (7th Cir. 2009) (internal citations and quotation marks

omitted). "In addition, in applying this standard, several courts have also held that a statement must be materially false or misleading to violate Section 1692e." Lane v. Fein, Such and Crane, LLP, 767 F. Supp. 2d 382, 389 (E.D.N.Y. 2011); see also Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757 (7th Cir. 2009) ("A statement cannot mislead unless it is material . . . .").

HoganWillig argues that the asserted finality of the letter was immaterial because it simply informed Marino that his debt would be referred to a debt collection agency if he did not pay it off. That a debt collector may take such an action, argues HoganWillig, is obvious even to the least sophisticated consumer.

Even assuming this to be true, however, the argument misses the mark. The question is not whether the least sophisticated consumer would be aware that a debt collector had the ability to report the debt to a credit reporting agency, but rather whether the inclusion of the words "final letter" would lead the least sophisticated consumer to conclude that this was his last opportunity to pay the debt before further action would be taken. See Herbert v. Monterey Fin. Servs., Inc., 863 F. Supp. 76, 80 (D. Conn. 1994). This Court agrees with its sister court in the District of Connecticut, which held under similar circumstances that "the least sophisticated consumer would interpret 'final demand' to mean that [debt collector] was affording [consumer] one last opportunity to resolve her alleged debt before it took further steps against her." Id. The court went on to find that the "'final demand' language contained in that letter was objectively false" and thus was a "violation of 1692e." Id.  The same is true here.

HoganWillig cites two cases in support of its position to the contrary, but neither is controlling. First, Neill v. Bullseye Collection Agency, No. 08-5800 (JNE/FLN), 2009 WL

9

1386155 (D. Minn. May 14, 2009) dealt with a false statement that was, without question, immaterial: the debt collector mislabeled the third notice as the "second notice." The second case, Lox v. CDA Ltd., No. 10-1042, 2011 WL 2610201, at *7-*8 (C.D. Ill. July 1, 2011), is factually analogous in that it concerned a non-final "final notice," but the court applied a legal standard inapplicable in this Circuit: It found that the plaintiff must produce "extrinsic evidence" supporting his claim that he was deceived. Id. This approach has been adopted in the Seventh Circuit, but not the Second. Compare Evory v. RJM Acquisition Funding LLC, 505 F.3d 769, 775 (7th Cir. 2007) (describing the usefulness of survey evidence in FDCPA cases and noting that "other circuits, perhaps less kindly disposed to survey evidence than we, treat the deceptive character of a debt collector's communication as a question of law . . .") with Beauchamp v. Fin. Recovery Servs., Inc., No. 10 Civ. 4864(SAS), 2011 WL 891320, at *2 n. 18 (S.D.N.Y. Mar. 14, 2011) (violations of § 1692e are always treated as questions of law in the Second Circuit). Thus, applying the standard as is stands in the Circuit, this Court finds that HoganWillig's motion should be denied because the "final letter" deceived the least sophisticated consumer. See Herbert, 863 F. Supp. at 80.

### 3. Bona Fide Error

HoganWillig asserts that even if it violated the FDCPA, its violations were bona fide errors. Indeed, HoganWillig "may escape liability if it can demonstrate by a preponderance of the evidence that its 'violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" Russell v. Equifax, 74 F.3d 30, 33-34 (2d Cir. 1996) (quoting 15 U.S.C. § 1692k(c)).

Under this framework, HoganWillig argues that its violations should be excused

because (1) it implements various training mechanisms meant to ensure compliance with the law and (2) it did not intend to defraud or harass Marino. This latter contention, even if true, does not save HoganWillig because the "FDCPA is a strict liability statute, [and] a plaintiff need not show that the debt collector intended to deceive in order to prevail on a claim that a communication is misleading." See Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 63 (2d Cir. 1993).

Regarding the first contention, as pointed out by HoganWillig, courts have found that legitimate efforts at FDCPA compliance may warrant a finding that an error is excusable. See, e.g., Beattie v. D.M. Collections, Inc., 754 F. Supp. 383 (D. Del. 1991). But the mere existence of generic procedures is not enough; instead, the debt collector must show, by a preponderance of the evidence, that it took precautions meant to eliminate the specific error complained of by the plaintiff. See 15 U.S.C. § 1692k(c) (procedures must be designed to avoid "such errors"); see also Beattie, 754 F. Supp. at 389 (noting that the debt collector posted cards on the phones to remind employees of the requirement of § 1692e(11), a violation of which served as a basis of the complaint); Seabrook v. Onondaga Bureau of Med. Econs., Inc., 705 F. Supp. 81, 88 (N.D.N.Y. 1989) (finding the defense invalid where debt collector did not submit evidence of procedures "'reasonably adapted to avoid' the errors complained of here"); Puglisi v. Debt Recovery Solutions, LLC, --- F. Supp. 2d ----, No. 08-CV-5024(JFB)(WDW), 2011 WL 4593334, at *7 (E.D.N.Y. Sept. 30, 2011 (asking "whether defendant demonstrated that it employed procedures 'reasonably adapted to avoid' the error that occurred").

Here, HoganWillig submitted evidence demonstrating that its compliance manual

reproduces the Section 1692c(c) guidelines and cautions its employees to send "only one more" communication after receiving a cease-and-desist letter from a consumer. (Compliance Manual; Docket No. 10-3.) But despite these warnings, the affidavit of Cindy Liberty, the HoganWillig account specialist assigned to Marino's account, reveals that these precautions are not followed in the regular course of business. She vows that after sending Marino the validation letter, she "diaried" his account as a matter of course. (Liberty Affidavit, ¶¶ 12-13; Docket No. 11). She states that thereafter:

> Generally, the next time the account would come up for review, one of two letters would be sent to Mr. Marino; if the outstanding balance was under $500.00 one letter would be sent; if the outstanding balance was over $500.00, a different letter would be sent. When Mr. Marino's account came up on October 8, 2010 for review, I forwarded the letter generally sent when the balance was under $500.00.[4]

(Id., ¶¶ 14-15.)

Thus, according to HoganWillig's own employee, the standard procedure entailed diaring the consumer's account and then, as it came up for review, sending the consumer a form letter. There is no indication that any special, cautionary procedures were invoked, or are typically invoked, when HoganWillig receives a cease-and-desist letter. Nor is there any indication that it undertook any procedures to protect against sending "final letters" that were not truly final. In fact, the contrary appears to be true, as the implication of Liberty's testimony is that HoganWillig sends the same letter to every consumer, varying only with the amount of the debt, regardless of whether it was meant as a true final notice, and regardless of whether the consumer had requested communication to cease.

---

[4] It is unclear why Liberty states that she sent the "under-$500.00" letter since Marino's balance was $620.00. She does not explain this and it may be an oversight in her affidavit.

Consequently, HoganWillig has not met its burden on this issue and its motion on this ground is denied.

## IV. CONCLUSION

For the reasons discussed above, HoganWillig's motion is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 9) is DENIED.

SO ORDERED.


Dated: April 24, 2012
     Buffalo, New York

                                         /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                              Chief Judge
                                   United States District Court